# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LUNA,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:17-cv-00214-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 12, 13) |

**I.**

**INTRODUCTION**

Plaintiff David Luna ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lower back problems and a learning disorder and he has difficulties being around others. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on August 14, 2013. (AR 152-160.) Plaintiff's application was initially denied on December 6, 2013, and denied upon reconsideration on February 12, 2014. (AR 90-93, 98-102.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on July 7, 2015. (AR 32-54.) On July 24, 2015, the ALJ found that Plaintiff was not disabled. (AR 14-27.) The Appeals Council denied Plaintiff's request for review on November 4, 2016. (AR 9-12.)

### A. Relevant Hearing Testimony

Plaintiff appeared with counsel[2] and testified at the hearing on July 7, 2015. He was in seventh grade when he stopped attending school and he does not have his GED or any vocational training. (AR 36-37.)

It takes him a long time to do things and sometimes his back gives out. (AR 37.) He can read, but he cannot do math. (AR 43.) It takes him a while to catch onto what he is reading and he has to reread things. (AR 47-48.) He can write a note using small words, but he is unable to write out some words. (AR 48.) He is unable to follow 2 to 3 step written instructions. (AR 48.) When he goes to a restaurant, it is hard for him to know what he is going to get. (AR 48.) He would need help paying bills and balancing a checkbook. (AR 43.) When he goes to a store and gives them a certain amount of money, he is unable to tell if he got the correct change back, but he will get the receipt and see if it is correct. (AR 48-49.) He can concentrate for 15 minutes before he has to take a break for 20 to 30 minutes. (AR 49-50.)

His back pain never goes away. (AR 38.) The pain radiates down his left leg and sometimes it goes down the side of his right leg and the back of his kneecap. (AR 38-39, 41.) Sometimes his back feels like it is pulling, but that does not happen every day. (AR 39.) He gets muscle spasms in his back 4 or 5 times a week and sometimes twice a day. (AR 45-46.) The

---

[2] Counsel appeared telephonically.

muscle spasms last until he takes a pill of Tramadol and Ibuprofen. (AR 46.) He does not have any swelling. (AR 46.) His back is most uncomfortable when he is sitting and it feels better when he stands up. (AR 39.) However, when he is standing too long, it hurts and feels better when he sits down. (AR 39.) He can reach out in front. (AR 49.)

He is unsure how much he can lift and carry, but he can pour a gallon of milk. (AR 41.) He can sit for 20 to 30 minutes before he has to stand up and he can stand for 20 to 30 minutes before he has to sit or lay down. (AR 41-42.) When he walks, he walks slowly with his walker and he cannot go a block.[3] (AR 42.) He even uses the walker in his house, but he tries not to use it. (AR 42.) He uses the walker for balance and sometimes he turns wrong and his back gives out. (AR 42.) He has problems putting on shoes and socks and bending over. (AR 42-43.) It is hard for him to climb stairs and walk on grass. (AR 43, 46.) He can walk up an incline such as a driveway using his walker. (AR 46-47.)

When he is having a lot of pain, he takes his medication and he lies down. (AR 39.) He is taking Tramadol, Gabapentin, and Ibuprofen, which help him. (AR 39-40.) He does not use ice, heat, or Icy-Hot stuff. (AR 40.) Surgery or injections have been mentioned a few times, but he is scared, he does not know what to expect, and he does not know whether he is going to be worse afterward. (AR 40.) He was supposed to get an MRI, but he cannot get a ride there. (AR 40, 45.) He has not been sent to the neurosurgeon, but he has a new doctor who wants to look into his back condition. (AR 40.)

Judith Najarian, a vocational expert ("VE") also testified at the hearing. (AR 50-53.)

**B. ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since August 14, 2013, the application date.

- Plaintiff has the following severe impairments: lumbar degenerative disc disease;

---

[3] Before he was given a walker, he used a cane for a week in June 2013. (AR 44.) He requested the cane because he needed help balancing and he could not walk. (AR 44-45.) He did not know that the cane would mess him up more. (AR 45.) He requested a walker because he could not take a shower and he needed to get around inside the house and sit down. (AR 44.)

1. borderline intellectual functioning; and antisocial personality disorder.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity ("RFC") to perform light work except he can lift and carry 20 pounds occasionally and 10 pounds frequently. Plaintiff can sit, stand, or walk 6-8 hours in an 8-hour workday with occasional stooping, crouching, crawling, climbing, and kneeling. He also needs an assistive device for ambulation and is limited to performing simple, routine tasks.
- Plaintiff has no past relevant work.
- Plaintiff was born on January 20, 1971, and was 42 years old, which is defined as a younger individual ages 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since August 14, 2013, the date the application was filed.

(AR 17-27.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by 1) rejecting the opinion of the physical consultative examiner, Dr. Theodore Georgis Jr., who limited Plaintiff to sedentary work activity with no postural maneuvers; and 2) rejecting the opinion of non-examining state agency psychological consultants, Dr. Kevin Gregg and Dr. D. Funkenstein, that Plaintiff is limited to 1 to 2 step tasks and instructions. Defendant counters that the ALJ properly evaluated the medical opinions.[4]

**A. The ALJ Provided Specific and Legitimate Reasons to Reject Dr. Georgis's Opinion**

Plaintiff argues that the ALJ erred in rejecting Dr. Georgis's opinion because the ALJ did not provide specific and legitimate reasons.[5] Defendant counters that Plaintiff ignores the majority of the ALJ's findings and the substantial evidence in the record.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d

---

[4] The Court notes that Plaintiff did not file a reply.

[5] There is no treating medical opinion in the record as to Plaintiff's physical capacity. The only medical opinions regarding Plaintiff's physical impairments are Dr. Georgis, who performed a consultative comprehensive orthopedic evaluation, and Dr. A. Nasrabadi and Dr. R. Fast, who are state agency medical consultants.

1403, 1408 (9th Cir. 1989)).

The Court discusses the reasons provided by the ALJ for giving little weight to Dr. Georgis's opinion to determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence.

1. <u>Dr. Georgis's Opinion is Inconsistent with the Physical Examinations in the Record</u>

Plaintiff argues that Dr. Georgis's opinion is supported by Plaintiff's examination with Dr. Georgis. Defendant counters that Plaintiff's physical examinations throughout the record were largely normal and were more consistent with the opinions of the state agency physicians than the opinion of Dr. Georgis.

The ALJ found that the record is inconsistent with Dr. Georgis's opinion that Plaintiff can lift 10 pounds occasionally and less than 10 pounds frequently, stand and walk with an assistive device, and sit without restriction for 6 hours in an 8 hour day, and cannot climb, stoop, crouch, crawl, balance, and kneel. (AR 22-23, 291.) The ALJ found that Plaintiff's physical examinations were generally normal except for tenderness to palpation, and that Plaintiff had normal motor strength and sensation and no weakness. (AR 23.)

On March 30, 2013, Plaintiff complained of lumbar spine and left hip pain after he fell and hit his left side on the edge of a toilet. (AR 242.) He had tenderness over his left hip, lower back, and left mid-thigh. (AR 243.) During the back examination, he was nontender, had a normal range of motion, and had normal alignment. (AR 243.) He had a normal neurological examination which included normal motor and coordination. (AR 244.) Plaintiff was prescribed Vicodin and discharged to home in stable condition that day. (AR 244.)

On April 22, 2013, Plaintiff went to the emergency department for left lower back pain radiating down his left leg. (AR 272-273.) During a physical examination, Plaintiff had no vertebral point tenderness in his back. (AR 273.) Plaintiff "[could] dorsiflex great toes bilaterally, normal sensory, motor, reflexes, normal speech and follows commands appropriately." (AR 273.) The physical examination for musculoskeletal system showed that all four of Plaintiff's extremities and motor were unremarkable. (AR 273.) He was diagnosed with

7

low back pain and was stable at discharge. (AR 273.)

On May 31, 2013, an examination revealed that Plaintiff had tenderness to palpation on left side of paraspinal muscle, but his range of motion was intact. (AR 275.) He had 5/5 strength throughout and grossly intact and symmetric sensation throughout. (AR 275.) There was no focal weakness overall. (AR 275.) He was assessed with back pain that was probably muscle sprain/strain. (AR 275.)

On June 27, 2013, Plaintiff stated that his pain is severe and getting worse and radiates down his left leg to the ankle. (AR 276-278.) He requested a walker. (AR 276.) During examination, his back was tender to palpation over his lumbar, paraspinal muscle, but there was full range of motion with some hesitancy. (AR 277.) Neurologically, he was grossly intact and had no focal weakness overall. (AR 277.)

On July 26, 2013, Plaintiff had tenderness to palpation over the lumbar area, he had no edema of his extremities, he moved all his extremities well, his calves were not tender to palpation bilaterally, and he had "crippling 2/2 back pain." (AR 278-280.) For the neurological exam, he was grossly intact and had no focal weakness overall. (AR 280.)

On September 26, 2013, Plaintiff had tenderness to palpation over the lumbar area, he had no edema of his extremities, he moved all his extremities well, his calves were not tender to palpation bilaterally, and he had 2+ peripheral pulses. (AR 280-282.) He had normal motor strength, grossly intact sensation, and no focal weakness overall. (AR 282.)

On June 6, 2014, Plaintiff was seen for back pain, but his back was not tender to palpation. (AR 345.)

On July 3, 2014, Plaintiff was seen for back pain radiating to his left lower leg and he had tenderness to palpation in the lumbar area and left hip area. (AR 333-341, 356-358.)

On June 1, 2015, Plaintiff had tenderness to palpation at lumbar distribution and his straight leg raise test was positive at 30 degrees bilaterally. (AR 305.)[6]

Therefore, the physical examinations were generally normal except for tenderness to

---

[6] There are several instances in the record where Plaintiff left during his office visits. (AR 315, 322-332, 359-365.)

palpation and a positive straight leg raising test and there was normal motor strength, sensation, and no weakness. Thus, the Court finds that the ALJ's finding that Dr. Georgis's opinion is inconsistent with generally normal examinations is a specific and legitimate reason supported by substantial evidence to reject the opinion.

### 2. Dr. Georgis's Opinion is Inconsistent with Imaging

The ALJ also found that Dr. Georgis's opinion is inconsistent with the imaging in the record. (AR 23.) Specifically, the ALJ noted that the diagnostic studies did not show central spinal stenosis and also did not show neural compression and/or lumbar radiculopathy. (AR 23.)

While Plaintiff argues that the ALJ mischaracterizes the MRI findings, it is not for this Court to interpret the medical evidence but to determine if the ALJ provided, in this instance, a specific and legitimate reason to reject Dr. Georgis's opinion that is supported by substantial evidence in the record. Garrison, 759 F.3d at 1012. The state agency physical reviewing physicians, Dr. Fast and Dr. Nasrabadi, analyzed the diagnostic testing and other evidence in the record and found that Plaintiff could perform a light RFC with occasional postural limitations. (AR 23, 63, 78.) Dr. Nasrabadi concluded that given the MRI findings, he would suggest a light RFC with occasional postural limitations. (AR 63.) Dr. Fast stated, "[Plaintiff] is alleging greater disability than would be supported by the objective evidence. There were no fractures or other acute injuries on x-ray when he fell. His two-level disc space narrowing in the lumbar spine with no neurologic impairment would not be expected to result in the need for a walker. Light is appropriate." (AR 23, 78.)

Although Plaintiff offers a different interpretation of the evidence, where the ALJ's interpretation is rational, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch, 400 F.3d at 679. Therefore, the Court finds that the ALJ's finding that Dr. Georgis's opinion is inconsistent with diagnostic studies showing no central spinal stenosis and no neural compression and/or lumbar radiculopathy is a specific and legitimate reason supported by substantial evidence to reject the opinion.

### 3. Plaintiff Improved with Medication and Physical Therapy

The ALJ also rejected Dr. Georgis's opinion because Plaintiff reported that physical

1 therapy helped and the pain was controlled by medication when medicinally compliant. (AR
2 23.) Plaintiff does not address this reason in his opening brief. Defendant asserts that the ALJ
3 properly found that Plaintiff's treatment history supports a light RFC.

Medical improvement from treatment supports an adverse inference as to the credibility of a claim of ongoing disability. Morgan v. Comm'r of Soc. Sec, 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Impairments that can be adequately controlled with treatment, including medication, are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Although Plaintiff told Dr. Georgis on October 17, 2013, that he had physical therapy which did not help, he had reported during a follow-up visit for back pain on September 26, 2013, that he had completed physical therapy and that it was helpful. (AR 280, 282, 288.) On April 22, 2013, Plaintiff stated that he ran out of Vicodin the prior week, but that the Vicodin was helping. (AR 272.) Although Plaintiff stated On May 31, 2013, that his pain is still the same and constant, he also stated that he wants Vicodin because it works. (AR 273-274.) On July 27, 2013, Plaintiff stated that the Gabapentin helps a little bit. (AR 278.) On July 3, 2014, Plaintiff reported that "[it is] getting better than before" and he reported that his pain is controlled with Tramadol. (AR 333.) There is a note on June 3, 2015, that Plaintiff had been using over-the-counter Ibuprofen/Naproxen with minimal improvement, but his Tramadol was refilled that day. (AR 304-305.) Also, Plaintiff was ambulating well with a walker that day and reported that it the pain was tolerable. (AR 304.)

Therefore, the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff's pain was controlled by medication when he was medicinally compliant and that Plaintiff reported that physical therapy helped. Accordingly, the Court finds that this is a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Georgis's opinion.

4. <u>Plaintiff Ambulated Well with an Assistive Device</u>

The ALJ rejected Dr. Georgis's opinion because Plaintiff reported that he ambulated well with an assistive device. (AR 23.) Plaintiff contends that his use of a cane or walker in

conjunction with the MRI results and the objective findings during the consultative examination support Dr. Georgis's opinion. Defendant does not address this reason.

While Plaintiff asserts his use of a cane or walker supports Dr. Georgis's opinion, the record reveals that Plaintiff reported that he ambulates well with an assistive device. On September 27, 2013, Plaintiff reported that he was walking better with a walker. (AR 280.) On October 22, 2013, Plaintiff pushed a walker to his testing session with Dr. Steven Swanson, the psychological consultative examiner, and he said that he keeps the walker with him because of intermittent back and hip pain, but he does not require it for ambulation. (AR 298.) On June 1, 2015, Plaintiff reported that he is ambulating well with a walker and he reported his pain is tolerable. (AR 304.)

Therefore, the Court finds that the ALJ's finding that Plaintiff ambulated well with an assistive device is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Gerogis's opinion. Accordingly, the Court finds that the ALJ did not err in rejecting Dr. Georgis's opinion because the ALJ provided specific and legitimate reasons supported by substantial evidence.[7] Next, the Court addresses whether the ALJ improperly rejected the opinion of Dr. Gregg and Dr. Funkenstein.

**B.  Any Error Regarding Plaintiff's Reasoning Level is Harmless**

Plaintiff argues that the ALJ impermissibly rejected, and did not even address, Dr. Gregg and Dr. Funkenstein's opinion that Plaintiff could do 1 to 2 step tasks.[8] Plaintiff asserts that there is a difference between simple, routine tasks, which is Plaintiff's RFC, and 1 to 2 step tasks. Plaintiff's argument is in essence that the reasoning level posited by the ALJ in the RFC is beyond the reasoning level that Dr. Gregg and Dr. Funkenstein found for Plaintiff. See, e.g., Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002-03 (9th Cir. 2015) (analyzing whether limitation to 1 to 2 step tasks matched Level 2 reasoning set out in Dictionary of Occupational

---

[7] Since the ALJ provided specific and legitimate reasons to reject the opinion of Dr. Georgis, any error in the other reasons given for discounting Dr. Georgis's opinion was harmless. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

[8] There is no treating medical opinion for Plaintiff's mental limitations, and in fact, Plaintiff had no formal mental health treatment. The record contains the opinions of a mental consultative examiner, Dr. Swanson, and two state agency mental reviewing physicians, Dr. Gregg and Dr. Funkenstein.

Titles job descriptions); see also Dictionary of Occupational Titles, "Appendix C—Components of the Definition Trailer," 1991 WL 688702 (4th ed. 1991).

Defendant asserts that Dr. Gregg and Dr. Funkenstein did not limit Plaintiff to 1 to 2 step tasks because they opined that Plaintiff was capable of sustained simple work. Defendant also argues that any error in not limiting Plaintiff to 1 or 2 step tasks would be harmless because the ALJ identified a job existing in significant numbers in the national economy that Plaintiff could perform even with an RFC for 1 or 2 step tasks.

Between steps three and four, the ALJ assesses the claimant's RFC, which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison, 759 F.3d at 1011. At step four, the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. At step five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 416.920(g).

The ALJ relies on the DOT, which is the Social Security Administrations "primary source of reliable job information" regarding jobs that exist in the national economy, in making this determination. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). Along with the DOT, the ALJ will rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on the RFC. Valentine, 574 F.3d at 689; 20 C.F.R. § 416.966(e). In concluding the step five analysis, the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy." Valentine, 574 F.3d at 689; see also 20 C.F.R. § 416.920(g).

"The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of the worker for satisfactory job performance.' " Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). Id. The two lowest levels are:

• **Level One:** "Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

• **Level Two:** "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

Id.

Courts have recognized that a limitation to simple or repetitive tasks is consistent with Level 2 reasoning. See Rounds, 807 F.3d at 1004 n. 6 (listing cases). Courts have also recognized that a limitation to 1 to 2 step tasks is consistent with Level 1 reasoning. See Rounds, 807 F.3d at 1003.

Here, the ALJ gave great weight to the opinions of Dr. Swanson, Dr. Gregg, and Dr. Funkenstein. (AR 24.) Relying on the opinions of Dr. Swanson, Dr. Gregg, and Dr. Funkenstein, the ALJ found that Plaintiff had an RFC of simple, routine tasks with no other mental limitations.[9] (AR 20.) The ALJ noted that Dr. Gregg opined that Plaintiff was capable of sustaining simple work and that Dr. Funkenstein provided a similar opinion. (AR 24.) In the MRFC – Additional Explanation section, Dr. Gregg and Dr. Funkenstein found that Plaintiff is capable of sustained simple work.[10] (AR 65-66, 80.) However, Dr. Gregg and Dr. Funkenstein

---

[9] The ALJ also noted that Dr. Swanson assessed that Plaintiff was able to maintain concentration and relate appropriately to others in a job setting and could understand, carry out, and remember simple instructions. (AR 24, 301.)

[10] The Court notes that the mental residual function capacity assessment section on the forms that Dr. Gregg and Dr. Funkenstein filled out indicates that:

[t]he actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and

13

found in the narrative section for "understanding and memory capacities and/or limitations" that Plaintiff is "[a]ble to understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions." (AR 65, 79.) Therefore, there appears to be an internal conflict in the opinion of Dr. Gregg and Dr. Funkenstein since the opinion states a limitation to 1 to 2 step job tasks and instructions and a limitation to simple work. While the ALJ did not address this conflict and the RFC of simple, routine work is in conflict with a limitation for 1 to 2 step tasks and instructions, any error is harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (The harmless error inquiry is "whether the ALJ's decision remains legally valid, despite such error.").

Any error is harmless because the VE identified a job that Plaintiff could perform that is Level 1 reasoning. Although Plaintiff asserts that the error "materializes" when the limitations assessed by Dr. Funkenstein, Dr. Gregg, and Dr. Georgis are considered together, the Court found above that the ALJ did not err in rejecting Dr. Georgis's opinion. Therefore, the physical portion of the RFC is affirmed. The only alleged error in the mental portion of the RFC involves the limitation to 1 to 2 step tasks.

The VE identified fruit cutter as a job that Plaintiff could perform with Plaintiff's RFC. (AR 51.) A fruit cutter is a Level 1 reasoning job where the worker will "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DOT no. 521.687-066, 1991 WL 674221. Level 1 is the lowest reasoning level possible for any job described in the DOT. See DOT App. C, 1991 WL 688702 (4th ed. 1991). Therefore, the fruit cutter job requires the lowest level of reasoning and includes the ability to carry out 1 to 2 step instructions, so even if the RFC included the limitation of 1 to 2 step instructions, Plaintiff could perform this job. Therefore, the Court finds that any error by the ALJ in failing to resolve the internal conflict in the opinion of Dr. Funkenstein and Dr. Gregg regarding Plaintiff's reasoning level is harmless.

///

---

adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

(AR 64, 79.)

# V.

# ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting Dr. Georgis's opinion and any error in failing to resolve the conflict in the opinion of Dr. Gregg and Dr. Funkenstein regarding Plaintiff's reasoning level is harmless.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff David Luna. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **February 6, 2018**

_____
UNITED STATES MAGISTRATE JUDGE